Charles Hembree brought this appeal alleging five different issues, four of which are foreclosed by circuit precedent in this district. The one I want to focus on, though, is the first one, that whether or not as applied to Mr. Hembree, 922G1 violates the Second Amendment. The D.A.S. Court made clear that prohibiting someone from exercising their Second Amendment right to keep and bear arms because they had committed a crime that is classified as a felony today doesn't meet the historical rigor required by Bruin and Rahimi. History supports a narrow tradition, and this Court has found a narrow tradition. Before we get into this, this is a difficult area, do you appear in front of district courts as well? I do. And do you think there is a clear rule right now from the Fifth Circuit on how to assess whether 922G1 prosecutions conform to the Second Amendment? Is there one rule that you and you've noticed district courts understand? One rule? Your Honor, D.A.S. tells us that we're to look at . . . But D.A.S. hadn't been decided at the time that your dismissal motion was denied, correct? That is correct. The only thing that had been denied at the time was . . . So why aren't, I mean, just because time's pressing, why aren't you either asking for us to go en banc in the first instance if there is no clear rule, or asking for a remand so the rule that does exist to the extent it's intelligible can be applied by the district court in the first instance? Your Honor, I think that at this point with the decision in Kimball, that may actually be the best case because Kimball went further, expounded on what Rahimi and D.A.S. says and found that the analogies that the government gave didn't necessarily apply except for the dangerousness ones. The same . . . Okay. But we did affirm in Kimball. So if you want to take . . . if you want to accept Kimball, then we're in the world of looking at whether this defendant is intrinsically dangerous, isn't that basically what the court said? The difference between Kimball and this one is in Kimball, it was a possession with intent, and Kimball actually had two different prior convictions for sale or possession with intent. In this case, the only conviction that Mr. Hembree has is a simple possession. I know, but that's still begging a question that I think is an open one in this court. We'll hear from the government, but if Kimball applies . . . Yes. . . . and we look at the predicate, who's to say we don't look at the full orbit of facts, not just the offense . . . the conduct of conviction? And we do know it was pled down from a dealing situation. And, Your Honor, we filed a motion to have the . . . obviously has not been granted at this point. We filed a motion . . . Now, let's say, I assume, you were correct, and if it's judicially noticeable, we have the indictment. It still looks like there was a pled down plea. In the indictment, though, we had an either-or situation. What the indictment says, possession with intent, and if not that, then possession, and the facts of the case are what they are. But Diaz, and then Kimball as well, tells us that we only look at the underlying conviction. We don't look at the facts surrounding it. Well, Diaz said that, but a lot of our cases after that have looked at, say, PSR facts relating to the predicate. Your Honor, in that case, in those cases, Bullock, Schnur, those line of cases, they looked at, very first thing is, is there a predicate, the predicate conviction that is analogous to something that could be death or permanent state forfeiture at the founding. And you're saying we stop categorically at the predicate, as we did in Diaz, theft. Theft was punishable by death, so you're not going to be able to get a gun again. That's the line of thinking. But subsequent case laws said we look beyond a categorical approach. We look at a multitude of facts pertaining to the predicate. Don't you agree or not? I don't, Your Honor, because even in Kimball, the Sixth Circuit in Williams, which— You lose under the Sixth and the Third Circuit, but you win on most other circuits because they'll take any felony. But let's just definitely don't complicate this with other circuits right now. Just as you were beginning to say, Bullock, Schnur, it looks like our court is assessing dangerousness according to sort of uncharged or at least unpled facts. Schnur and Bullock looked at the underlying felony, and that's what Diaz tells us, and that's what Kimball tells us. And Kimball said the relevant consideration— Categorically? Just the elements, rather than the facts of the predicate? Yes, Your Honor. But you know these cases. Morgan talked about 14 bullet casings. Reyes talks about high speed. Those aren't looking at elements. Those are looking at facts, right? You know those cases? Yes, Your Honor. Okay. So— Your Honor, in Morgan, well, let me back up. In Kimball, as I was going to say, that was just cited here recently, it says the relevant consideration is the defendant's prior convictions that are punishable by imprisonment for a term exceeding one year. Not unproven conduct charged contemporaneously with the defendant's G1 indictment or prior conduct that did not result in a felony conviction. That's a strong disclaimer by Kimball, and that's published. You're right. But that's not consistent with earlier published case law, is it? Your Honor, it is consistent because it cites the Diaz, and it follows the Diaz line of  The other—now, looking at some of these other cases, the court does sprinkle in some of the Williams from the Sixth Circuit line of cases, does sprinkle that in. But the fact— You would be in trouble under that. I would be in trouble—I don't know if I'd be in trouble under that, Your Honor, because it looks at everything involved. And so I think that even under Williams, you look at a case by case— We look at Williams. Is that Thapar? Or is Williams—is that Sixth Circuit? That's Sixth Circuit, Your Honor. So if we look at what Thapar is saying, we can even look at his arrest facts, and there we really think your client's a trafficker. And other circuits have looked at it and said that, you know, flat out that felony conviction is enough. You know, the government says the felony conviction— Judge Thapar and the Third have not said that. The Third has not said that. They have looked at things like, is he on probation? What happened when he was arrested? They're going far beyond the predicate, and therefore you've got a big hill to climb at that point. And I understand. And the Fifth Circuit has rejected that. I know. And I think even sprinkling in Williams, it gets away from Diaz. Because even with the Diaz line of cases, and even the cases in the Fifth Circuit that have found—that have tried to follow Diaz cases, they've looked at first, what is their predicate felony? Is their predicate felony one that at the time of the founding could have been either— What do we do with published cases that, quote, sprinkle in other authority? Your Honor, I think you have to look at the rule of orderliness and look at what came first. Diaz— It stops at Diaz. Everything after that is wrong until we get to Kimball and you like Kimball. And I'm not—this is more self-criticism. I'm certainly sympathetic to the situation you're in. It's just I'm trying to understand, we would reverse here if what? Diaz controls with Kimball and the disclaimer. It's only the predicate offense. Then we do the history, right? Isn't that your theory? That is correct, Your Honor. But I think even the cases that sprinkle in the facts applaud Diaz as well. I mean, I don't think—I think you have to ignore the facts, which is what Diaz and Kimball tell us to do. You have to just look at the underlying felony. And so the underlying felony in this case, you don't look at the facts surrounding it. You don't look at whether or not it's split down. What is the underlying felony? And in this case, the underlying felony is simple possession. And then looking at a lot of cases from Daniels and Connolly and even Kimball as well, simple drug users were not disarmed at the time of the felony. That is dicta, but it's there in Daniels and Connolly. It's implying that simple possession wouldn't count. The government's aware of that, and they're saying, well, sure, it's sort of like opium possession, legal, but it's actually more like possession of contraband. They would have—they would have hung you. Is that—is that really the choice we have? Stolen horse, opium, one or the other is the historical analogy? Well, all right, so looking at it simply as the stolen horse, I mean, even in Kimball they said that that stretches all analogical reasoning. And so at the founding that would not—and this court in Kimball said it's not sufficient even for a drug trafficker, so let alone a simple drug user. And so the opium—the government didn't argue the opium in their briefs, but even looking at the dangerousness, the analogs that they did provide, they don't get to the Connolly, the Daniels, or in this case, Mr. Hembree in simple possession or simple drug user. And it's some of the same—similar dangerousness as they argued in Connolly and Daniels that was rejected, that certain people would be disarmed, certain people that—whether it be Catholics or, you know, rebellion or things like that, that is not a proper analog for a possession case. And so— Putting aside the circuits that say any felony counts, is there any circuit that is upheld in 922g1 conviction when the only predicate is simple possession? Your Honor, I believe it's the Eighth Circuit that said that, you know, if it's a felony, it counts. And so— No, I'm saying putting aside the circuit. Oh, putting aside. I'm sorry. I'm sorry. Because we're going predicate by predicate, and I think I'm right, the government will confirm, there's been no Fifth Circuit case that has said simple possession does count. No, there has not been. My question is, for circuits that aren't automatically saying all felonies count, is there anyone that has upheld a conviction on simple possession as the only predicate offense? I'm not aware of one, Your Honor. So that's your argument. That is— That's your argument. Simple possession wouldn't have been punishable by lifetime disarmament. It may be if you're under the influence of alcohol or under the influence of opium, you're too impaired for the short duration. But it doesn't mean people back then would have said you can never get your musket again. Correct. There was no—there was no death penalty. There's no estate forfeiture because you had used an illicit substance. And that, back then, whether it's marijuana or alcohol or even opium, you did not lose your rights over the course of your entire life. And so that is our argument. No, as I'm aware, no circuit has reached simple possession as a predicate. Oh, Connolly. Your case is like Connolly is what you're suggesting. Your Honor, the government is—the government's presentation did not— It's a specific question. It's probably a softball question. It is. It's like Connolly and it's like Daniels. Daniels is a little more detailed because it was a trial, but yes, it is like Connolly in that it was simple drug use. There was no showing that the person was—Ms. Connolly at the time—I believe it was Ms. Connolly—was actively using at the time. Connolly, in that case, admitted that she had used marijuana on occasion as a sleep aid, nothing showing that she was presently intoxicated. There's nothing showing that when Mr. Hembree was convicted of the possession that he was actively intoxicated at that time. It's a different statute. Those are G-3 cases. That's correct, Your Honor. It has to be dicta, whatever you're extracting from them. The dicta on whether— Well, Connolly and Daniels were a different federal felony offense, so anything we said in them isn't controlling as to G-1. You're just saying it's pretty powerful history. It's pretty powerful history, but then you look at the analysis in Kimball that looks at drug trafficking and said that even the analogs that the government proposed, which are the same as they proposed here, were not sufficient for drug trafficking, let alone drug use, and said analogical reasoning was stretched beyond all limit with the stolen horse, the theft of mail, the forged security documents. And so, yes, it's powerful in the G-3 context, but it's also been used in the G-1 context under Kimball. And so under Kimball, we find that the government used the same analogs, both those three that are named as well as the certain individuals being disarmed, and the court found at that time that those analogs didn't correspond, but they also found that the ones that the government used didn't necessarily correspond to drug use. Just keeping it simple as a defense attorney, if Hembree, before he got his gun and got arrested, had called you and said, I had this old possession conviction. Can I get a gun? What would you say in the Fifth Circuit, Mississippi, Louisiana, Texas, is the advice you would give him? I would tell him that facially . . . Because any felony counts. Right, because any felony counts. I would caution him, however, because there's no set rule for someone with a prior possession charge. And so I wouldn't tell him absolutely no, but I wouldn't tell him absolutely yes. It's not a good position for an American to be in. No, it is not. And that's why, as applied to Mr. Hembree, again, this facially has been foreclosed by Diaz, but it is not a good position for anyone to be in because you don't necessarily know what the law is going to be. Now, unfortunately in Branson, the court said, as to vagueness, that he knew at the time that he was convicted of a felony and couldn't get one, but if he called today, I would say, I don't know. But you're still not asking for en banc in the first instance? We did not at this time, no, Judge. We may in the future, though. I appreciate it. I really appreciate it, how well prepared you are on all the cases. Thanks, Judge. You have time for rebuttal. Thank you. And we know Ms. Case knows the Second Amendment pretty well, too, so she's going to clear it all up. I wish, I wish. Thank you, Your Honors. May it please the Court. Jennifer Case for the government. History shows that legislators may restrict gun possession by categories of people who present a special danger of misuse of the guns or who may threaten the public order. Illegal drug possession presents such dangers. Disarming those like Hembree, who have been convicted— Has any circuit yet said just possession alone? That isn't a circuit that's saying every felony counts? I can say no as to published opinions. I have not looked at all the unpublished ones, but I would say no. There is no circuit under which Mr. Hembree's as-applied argument would prevail, unless perhaps this one, because even in the Sixth Circuit, it would be his burden to show that he is— That's a strange rule, putting the burden on the defendant. As to an element of proof, the government's got to prove beyond a reasonable doubt, right? No, because it's not an element of G-1. It's the second element. You've got to have a qualifying felony. The defendant's burden is to prove that he is a special exception to the dangerousness. Since when do we put on the defendant the duty to prove an element the government has to prove beyond a reasonable doubt? No, no, the Sixth Circuit doesn't require proof from the defendant as to what his predicate can be. They've got—but the defendant's got to accept himself from it, right? He has to say—so, I think that's part of— I mean, here's—let me—in the Sixth Circuit, for a moment, just indulge me. Let's say the defendant doesn't file a motion to dismiss, and then they say, I'll plead. The judge would have to say—the judge would have to find, to accept the plea, that the predicate qualifies. Yes or no? No, Your Honor. That's not how I read the Sixth Circuit. I read it as, if the defendant believes that his characteristics and history show that he would be accepted historically, that he can put forward evidence. Your Honor, I'm a range scenario. I had this misdemeanor offense that happened to have a two-to-five-year sentence at the time. I've done nothing wrong other than hunt without a license since then. Okay, but see, here's the problem with that, and we have begun to adopt it, sprinkled it in. Let's say they don't plead guilty. They go to trial. They don't file a motion to dismiss. They go to trial. At that point, the defendant, you agree, can just sit there silently. That's correct. So what's the jury instruction on this? How does the jury instruction accomplish what you just said without infringing the defendant's right to stay silent? Because in the Sixth Circuit, you've got to disprove it. Right. How do you do that? I appreciate the awkwardness of that. I think the government's burden at trial remains the same. Those instructions are the same. So the government says you heard he stipulated he has a prior felony? That's right. A 920 dismissal? Or the jury can convict on that? So in that universe, it appears that the—I don't know where the Sixth Circuit has placed that. So let's stay in the Fifth. Let's stay in the Fifth. You heard him, and I'm just jumping because you know this stuff so well and quickly. Am I right, roughly, that you've got a hard case here, if we interpret Diaz to say it's the categorical approach? Because mere possession, no circuits yet set it. And then we've got Kimball recently saying you can't look at sort of uncharged conduct beginning to push against the Third and the Sixth. But there are cases like Reyes and Morgan that do allow you to look at the facts, and that's why you pointed out judicially noticeable facts, that it looked like it was a plea down from trafficking the guys. Is that where we are, sort of? We are—I agree that it's muddy what this court has said it can consider in evaluating these as-applied challenges. Diaz was, in many respects, an easy case because there was a historical twin or car theft. But the Diaz statement, which is we're going to look at the crimes were punishable by more than a year, was just a quotation of the statute. It was not making some broad legal proclamation. The Diaz case didn't need to look—the Diaz court did not need to look beyond that. Other panels since then have had fact patterns in a mix of them, and let's see. So, for instance, in Reyes, this court listed all the felonies, and it even listed all the felonies that resulted in conviction after the gun possession. And, of course, it went through the facts from the PSR. It's not clear which of those were relevant to the holding, but those were all placed on the table. The Schnur court mentioned all the charges, even the ones that were no-approst. So it's muddy, sort of, how far we could go. I will say that looking only at the predicate is inconsistent with the historical tradition of disarmament because, historically, Congress disarmed not just because you had a criminal history. Congress disarmed for all sorts of reasons, including your status, things you couldn't control, whether— Whether you're on probation. Well, whether you're on probation, but even sort of the abhorrent things— But we are bound by Diaz. The government didn't—I mean, there was cert file, but it was denied, and the SG didn't jump in to say, take it. But Diaz doesn't say—in some respects, it does, because Diaz says you can't look at misdemeanors, but G1 specifically, we colloquially say felon in possession, but it's not felons. It's those convicted of a crime punishable by more than a year, which sometimes is a misdemeanor. So why would we not be able to look at misdemeanors, even though Diaz says you cannot? Similarly, some of the crimes that were punishable by death at the founding, including what Diaz relied upon, theft. That's a misdemeanor now in a lot of instances, but the historical analog is there. Why would we not be able to look at that? Why would we not be able to look at— I may be sympathetic, but we have Diaz, and so it looks like we're just looking at the predicate. We didn't have any history done below because it was before Diaz. The government's not suggesting we should remand to have the district court muddle through what we don't seem to be able to do? We have not suggested that. We did raise in our Rule 28J our misappreciation originally of what was presented below and that this should be a plain error case, if at all, if it's not waived by virtue of the plea agreement. And part of what that highlights is the reason facts were not developed specific to this predicate offense is because it was never raised below. It was not considered by the police. But they couldn't have had a crystal ball to see where our law was going to go. For sure. And I like that you aren't orally pressing—I don't speak for my colleagues—the waiver here, because a conditional plea, if the guy actually isn't guilty of a crime, the government wouldn't want to hide behind it. Yes, we assume we're here to talk about the as-applies. I appreciate that a great deal. I will say, though, that just looking at if we constrain ourselves as we're speaking with Diaz and those cases, who since Diaz, some of the panels have restricted themselves with that language, the predicate here of drug possession fits within Kimball and Reyes and Contreras. Contreras was a G3 predicate that this court upheld. Reyes had possession of cocaine, but also delivery of cocaine. And the court didn't tease out, what about those offenses? Also felon in possession, I believe. What about those? And then, of course, recently, the Kimball decision. The Kimball decision talks about drug trafficking, because that was the predicate. But the language of the decision speaks to the dangerousness of drugs and guns and that combination, and how Congress in the present day, because that is the fear currently, that's the fear of our society, the dangerous combination of drugs and guns, that that is something that Congress can remedy through G1, at least attempt to remedy through G1. Kimball does have the disclaimer. Did Judge Smith write that decision? He was on the panel. It says, not uncharged conduct. So you're 28-J pointing out the arrest facts. If we follow Kimball, we can't look to the arrest facts. Right, right. And that, I appreciate that. It was just in the spirit of... No, no, no. That's fine. Other cases would suggest. I don't blame you for doing that. Yes. So, and here, unlike, for example, O'Connelly or Daniels, not only is that a separate statute, there's no conviction before you're convicted of G3. There is, however, a conviction here, where you have shown, you've been proven to have violated the criminal law, with a serious offense, something punishable by more than a year in prison. Drug possessors, like Hembree, are necessarily part of the illegal drug market that the Kimball Court was talking about. And that market is dangerous. He's either the buyer or the seller in that market. Violence is part of the drug trade, as the Kimball Court tells us. And drug possession necessarily involves interacting with and enriching drug traffickers. Well, how does your argument fit, again, I'll go back to Connolly, a simple possession of something like marijuana, or somebody who's not... I mean, are we to assume that the possessor was a purchaser, and therefore engaged in  Is that where you're leading us? Because that's a concern. And I'm thinking back, just hypothetically, what about a case where the government charges multiple people in a drug trafficking conspiracy, and then allows one or more defendants to plead to something in order to get cooperation and a witness, misprision of the felony? That happens with some frequency. So that person now has pled to a misprision, but is that person also now subject to a G1? Right. So the government's top-line position is that anyone convicted... Convicted. ...of predicate G1 is disarmable, consistent with the Second Amendment. We know that from Diaz, that is not the law of the circuit. But in my hypothetical, the person's not convicted of anything other than a misprision. Right. Just like, in this case, Hembree has pled guilty to a possession offense. I think the answer will depend on whether this court settles on this rule that you can only look to the predicate offense, as opposed to how, as applied challenges are traditionally done, which is the entire history and characteristics of the person. So if the court settles on that, there may be exceptions, per your hypothetical, where subsequently, this court finds there's no historical tradition for disarming those convicted of misprision, even though the substance would show that those were drug traffickers. But here, we have somebody convicted of drug possession. So he has been convicted of a crime which involves him participating in this dangerous and violent illegal narcotics market, and that is the reason that he can be disarmed, consistent with what this court said in Kemble and Reyes and Contreras. Just on the top line position, I'm suspecting you've talked to criminal appellate, and you may have a bunch of these lined up. When I look at the SG position, they seem to be discouraging cert because felons can apply to get their rights restored. Have you seen that argument? So we, oh, yes. The government's, I wouldn't say discouraging cert, but I would say. They haven't said, we've got a bunch of circuits where any felon goes to jail for a lot of time, and then you're lucky, you're in the fifth, you don't. That's not a really good situation. For the same crime, people are going to jail and elsewhere aren't. But the SG keeps saying, oh, we're going to allow people to ask us for cert clemency. Is that even a serious argument? It is a serious argument. People have to plead, go to jail, get arrested, get a lawyer, and the salvation for them, we're told from the Department of Justice, is afterwards you can ask for mercy. No, no, no. So in a case, say Mr. Hembree's case, before he had the gun here, he could have drawn. ATF, you can call a hotline? So Hembree, I have to use that as a hypothetical. Because Hembree could not have, because at the time of his gun possession, this 925C avenue was not. So 925C is available. Any American can call, and they get a little legal answer? The Attorney General has recently withdrawn. I know they withdrew. I didn't know it was any American, before they grab their gun, can call a little special government number, and they get told this would be a felon or not? So I admit to ignorance as to how it works. I do know it's now with the Attorney General, but someone like Mr. Hembree, who continues to engage in this unlawful conduct, although we couldn't consider that here under the Diaz rule, if that is how we're presenting things this morning, he could, in theory, go to the Attorney General and say, look, I meet the requirements of 925C to get my gun rights restored. Please restore them. That would be the avenue. That would be him saying, I can't get it under 922G1 first, but I want, right? Correct. But that's sort of begging the question. So the same question I ask the opposing counsel. Let's say you were a defense attorney, and Hembree calls and says, 20 years old, mere possession, am I in the Fifth Circuit? Yes or no, if I get a gun, I'm going to jail? No. Yes. You are subject to criminal punishment because you have a felony conviction for drug possession, and you're trying to go from jail to get a gun. That's not going to work. Because facially, the statute says any felony. But then he says, but in the Fifth, I read it's not, depends on the predicate. I would caution him that, as applied, the government has these cases, and the Fifth Circuit has foreclosed the challenge as to drug traffickers, as to the G3. Right. And he says, I'm not a G3. I'm not under the influence, and I'm not a trafficker. I'm just, once upon a time, I possessed. Right. It is not settled in this court. This case will settle it, right? Right. But if someone were to ask, that would be the advice I would give. What is the very, very, very best case that mere possession is a sufficient predicate to warrant permanent disarmament? I have no case for mere possession where this has been decided that I know in the country.  I think Kimball is the best case because it speaks to the illegal drug market. Violence and danger are not elements of possession with intent to distribute, which were the crimes in Kimball. They are also not elements of this crime. What Kimball was speaking to was the dangerousness of drugs and guns together. And the court found that all the branches of government agree about that. That's not historical because we do know the framers didn't disarm people for life for having opium. For having, I'm sorry, for opium? Correct. So we sort of, if Kimball stands just for that, a 3142, you're dangerous. We've really thrown Bruin out the door. No, Bruin actually tells us that where something is an unprecedented societal concern, such as the modern sort of rage of guns and the war on drugs, then the court needs to take an even more nuanced approach to its historical analysis. And yet opium is pretty darn close. Sounds like back then they enjoyed opium. But the concern wasn't there at the founding the way that it is now. The same is true of Rahimi's domestic violence. There was domestic violence then, but the concern wasn't the same. The concern for domestic violence was really a 90s issue, whereas the war on drugs was at least a 60s, 70s issue. You say in your red brief that there are facts. You say in your red brief there are facts that demonstrate Mr. Hembury's dangerousness. What are they? What are the specific record, are there any record citations to facts that underscore or demonstrate that his underlying conviction of meth possession in 2017 renders him dangerous? So, we have very few facts once we narrow ourselves to the predicate offense, which we only have in one paragraph of the PSR, as he was charged in one way and then he pled to possession of meth. That's all we have with respect to the facts. And on pages 20 and 21 of our brief, we do our best to explain why those facts put him in the illegal drug market, which is what the Kimbell Court actually acknowledges is dangerous and subject to disarmament via G1. I do think it's hard looking, trying to go back to history, but avoid the temptation of finding an analog that's super close. We can, with a page worth of analogs that the government has provided through these many cases through the past year and a half or so, put crimes into categories. And there are a few categories from the founding that could apply to a case like Hembury's, even if we didn't have Kimbell. For example, there were just folks, categories of people that Congress thought caused fear in the public. And so, we had going armed laws and the law of a phrase. But then we later had laws against mentally ill and intoxicated, which went in that group. And we had laws against tramps and vagrants, which were just people going around asking for money, which were thought to be the genesis of criminal activity. And those people were disarmed. Flipping that, that could also be said to be a group of laws against public safety to try to prevent dangerousness or things against public safety. Also, Congress legislated in the world of trying to keep peace and order. And some of those laws fall into that bucket, as do the sort of abhorrent laws for enslaved people not having guns or religious minorities, those sorts of people. But those were big buckets that you could use as analogs for this unprecedented societal concern of drugs and guns for any combination of reasons. But following the throughline of Kimbell, the government would ask that you... I appreciate that, but you haven't offered a bucket of just contraband. Are you back... You're no longer pressing that. It's the going armed laws. That's what Kimbell said. The way that it was presented was not a good analog. We did present it here in our brief, but not presenting it at this point because of the Kimbell decision. Excellent. Thank you.  Yeah, excuse me. The government argues... Well, in this brief, they argued similar to what they argued in Kimbell, the three predicates that they argued. The proceeding of a stolen horse, theft of mail, and those other things. They also argued at the same time dangerousness in Kimbell, just like they did in this case. In Kimbell, in this case, they cited D.S. and cited specific references of D.S., specifically page 470, which talks about the minority report or minority speech in Pennsylvania, Samuel Adams' amendment to the Massachusetts possession of guns and taking it away. They also talk about the going armed and fray laws referenced in D.S. And in Kimbell, the side from Kimbell is the government's analogs, speaking of those from D.S., are a closer fit for drug traffickers than for occasional drug users, which is what we have here in Hembree. Now, whether we look at Connolly as a G8 or a G3 or this as a G1, it's still the same test. It's the test of whether or not the government... The how and the why. How they do it and why they do it. And in this case, the government can't show any history based on the predicate, which is D.S. D.S. says to look at that there's any danger from Mr. Hembree's prior conviction for possession. I think the argument is today guns and drugs are just indivisible and they're equivalent to the going armed laws. It's something they didn't have back then. But that was rejected by Kimbell as to drug users. Well, right. It was rejected in dicta that wasn't essential to the holding. Well, what about her point that Rahimi actually maybe supports the government here? In other words, they didn't really at all see much wrong with not domestic abuse or certainly wouldn't have taken your gun away for it. Your Honor, the Supreme Court... Under the G.A., what Rahimi was looking at, and they upheld the conviction based on the going armed and a fray laws and causing harm to other people and a judicial fact finding by court that he had done this and giving the restraining order in that case. So there was a judicial fact finding that he was a danger. And so Rahimi doesn't help in disarming Mr. Hembree because there has been no judicial fact finding that he's a danger. But we hadn't really said that's what it's all about. That has been a very evolving, as you say, bumpy road. So again, wouldn't you want to have a remand so that very minimal paragraph in the PSR about the characteristics of the predicate could get fleshed out? We find out if he actually is a trafficker or he's just a recreational user. No, Your Honor. A remand is not necessarily because we have the test in Kimball and Connolly. Diaz gave us the test, and Kimball showed us the test, and with Connolly we have that. And Kimball specifically said that dangerousness is not appropriate. And in fact, in Rahimi, the government argued responsible citizen. And in the oral argument, admitted that responsible is just code for not dangerous. And that's noted in the responsible citizens rejected in the main opinion and noted in Justice Thomas' dissent that no matter how many adverbs, verbs, adjectives, or whatever you use, responsible, dangerous, it's not part of our constitutional structure. And so we don't look at the dangerousness to determine whether or not somebody should be disarmed forever. We look at the predicate felony, and only the predicate felony and not any facts surrounding the G-1 arrest or any facts around the predicate felony. We look at the predicate felony. We have not made it that clear. I agree. That would definitely help your argument. Well, Diaz says that. This is a case of first impression, as Judge Willett was asking. There's really no case yet on mere possession. No, not that I'm aware of. No, there's not. And there's been no 28-J, although you can do an after argument with the government, both supporting the full court maybe needs to clear this up. Could do that. You could. We could, Your Honor. And I would disagree that there's not a clear test. Diaz and Kimball both say, here's the test. Look at the predicate felony. Don't look at it. And the felony is any sentence term exceeding one year. Look at the predicate felony. See if it was something at the founding that someone was either death or disarmed by estate forfeiture. And so the test is there. Thank you, Your Honor. Thank you both very much. Appreciate it. And I think we're in recess, and that's the end of the sitting. Thank you.